**In the Matter of the Application for the DISCIPLINE OF R. Kathleen MORRIS, an Attorney at Law of the State of Minnesota.**

No. C1–86–1770.

Supreme Court of Minnesota.

July 10, 1987.

Doyle & Michales, Minneapolis, for appellant.

William J. Wernz, Director, Lawyers Professional Responsibility, Thomas S. Vasaly, First Asst., St. Paul, for respondent.

PER CURIAM.

On October 22, 1986, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent, R. Kathleen Morris. This court referred that petition to a Referee. The Referee granted the Director's motion that the findings of the Commission Established by Executive Order No. 85–10 Concerning Kathleen Morris, Scott County Attorney (Commission) be declared *res judicata* for purposes of the disciplinary proceedings. Morris filed a notice of appeal from this order, and this court granted discretionary review.

On March 8, 1985, Governor Rudy Perpich received a petition requesting that Scott County Attorney R. Kathleen Morris be removed from office. At that time, the relevant statute provided:

> The governor may remove from office any clerk of the appellate courts or a district court, judge of probate, judge of any municipal court, court commissioner, sheriff, constable, coroner, auditor, county recorder, county attorney, county commissioner, county treasurer, or any collector, receiver, or custodian of public moneys, when it appears to him by competent evidence, that the officer has been guilty of malfeasance or nonfeasance in the performance of his official duties. Prior to removal, he shall give to the officer a copy of the charges against him and an opportunity to be heard in his defense.

Minn.Stat. § 351.03 (1984) (repealed by Act of March 24, 1986, ch. 418, § 11, 1986 Minn. Laws 624, 627).[1] Governor Perpich, pursuant to Minn.Stat. § 351.04 (1984) (repealed by Act of March 24, 1986, ch. 418, § 11, 1986 Minn.Laws 624, 627), appointed the Honorable Lynn C. Olson as special commissioner to hear testimony. Irene F. Scott and Julius E. Gernes were also appointed as assistant commissioners. Between June 13, 1985, and August 19, 1985, the Commission heard fifteen days of testimony. Morris was present and represented by counsel. All witnesses, including Morris herself, were subject to direct and cross-examination.

On October 9, 1985, the Commission presented its findings, conclusions, and recommendation to Governor Perpich. The Commission found that Morris had violated both Rule 9.01 of the Minnesota Rules of Criminal Procedure and a trial court's sequestration order, and that these acts were malfeasance. The Commission's conclusions were, first, that:

> Based upon the foregoing findings of fact, the Commission concludes that the statements of murder and mutilation made by children who were potential witnesses in the sex abuse cases in Scott County went to their credibility as witnesses and were, therefore, exculpatory evidence. Under Minnesota Rules of Criminal Procedure, Rule 9.01 these [investigating officers'] notes were discoverable. The Commission also concludes that Kathleen Morris did have knowledge of the existence of the murder and mutilation notes and did suppress those notes from the defense counsel in the Bentz cases who had asked for exculpatory materials. Kathleen Morris knew that others could consider these notes exculpatory. The Commission finds that the suppression of the murder and mutilation notes does constitute malfeasance on the part of Kathleen Morris in her role as county attorney in that she intentionally suppressed the existence of those murder and mutilation notes from defense counsel on he [sic] own initiative knowing of their impeachment potential. Even if Kathleen Morris though [sic] her reasons for suppressing the notes were valid, nonetheless, she had a clear duty to apply to the court for a protective order rather than determining on her own that the exculpatory material should not be disclosed.

The Commission further concluded that:

> Based upon the foregoing findings of fact, the Commission concludes that

---

1. The same legislation which repealed Minn. Stat. § 351.03 and § 351.04 also established a new procedure for removal of county officers. *See* Minn.Stat. §§ 351.14–.23 (1986). The new procedure requires a petition signed by registered voters totaling at least 25 percent of the number of persons who voted in the preceding election for the office held by the official named in the petition. Minn.Stat. § 351.16. The petition is forwarded by the county auditor to the clerk of appellate courts, who submits it to the chief justice. Minn.Stat. §§ 351.16–.17. If the chief justice determines that the petition alleges facts which, if proven, constitute malfeasance or nonfeasance in the performance of official duties, he shall appoint an active or retired judge to act as a special master. Minn.Stat. § 351.17. The special master then holds a public hearing and issues a decision. Minn.Stat. § 351.19. That decision may be appealed to the supreme court. Minn.Stat. § 351.21. If the official is determined to have committed malfeasance or nonfeasance in the performance of official duties, a removal election is held. Minn.Stat. §§ 351.20, 351.22.

while it was reasonable to house the children together during the Bentz trial, Kathleen Morris had a duty, because of these special arrangements, to make both the children and the adults involved aware of the sequestration order. She also had a responsibility to see that her own behavior was above reproach. It has been proved by clear and convincing evidence that Kathleen Morris breached her duty and failed in her responsibility and, thus, violated the Court's Order for sequestration of witnesses in the trial of Robert and Lois Bentz. In the judgment of the Commission this act constitutes malfeasance.

The Commission nevertheless recommended that Morris not be removed from office. The governor accepted the Commission's recommendation and, on October 10, 1985, announced that Morris would not be removed from the office to which she was elected. The only judicial proceeding with respect to the Commission's investigation was Morris' challenge of the Commission's use of investigatory subpoenas. *See Bush v. Perpich,* 370 N.W.2d 886 (Minn.1985).

Approximately one year later, on October 22, 1986, the Director filed a petition for disciplinary action against Morris, alleging the same incidents of misconduct that the Commission had found to be malfeasance. This court referred the matter to a Referee, who granted the Director's motion for an order precluding Morris from relitigating the Commission's findings. He adopted the Commission's findings of malfeasance, as follows:

> The Commission concluded that two acts of malfeasance by respondent had been proven by clear and convincing evidence:
>
> 1. That respondent violated Rule 9.01 of the Minnesota Rules of Criminal Procedure by suppressing exculpatory evidence. cf. DR7–102(A)(3).
>
> 2. That respondent violated the Court's Order for sequestration of witnesses in the Bentz trial. cf. DR7–106(A).

This case presents the issue of whether the findings of the Commission concluding that Morris committed malfeasance may form the basis of referee recommendations for discipline by applying principles of affirmative collateral estoppel.

The Commission concluded that "Kathleen Morris violated Rule 9.01 of the Minnesota Rules of Criminal Procedure by suppressing exculpatory evidence," that "Kathleen Morris violated the Court's order for sequestration of witnesses in the Bentz trial," and that these acts constitute malfeasance. The Referee, in his memorandum, equated the Commission's conclusions with violations of DR 7–102(A)(3) and DR 7–106(A), and concluded that "it is appropriate to regard the findings of the Governor's Commission as *res judicata* on the issues of professional misconduct presented by the petition here." He therefore ordered that future hearings "in this matter shall be confined to the presentation of evidence and argument on the appropriate disciplinary sanctions, if any, to be imposed on respondent for her proven professional misconduct."

Morris appeals from this order, claiming that *res judicata* or collateral estoppel should not apply because no final order was entered or served and she could not have appealed the Commission's findings. The Director, on the other hand, argues that administrative collateral estoppel does not require a decision to be entered as a judgment and that Morris could have appealed the Commission's findings.

"The doctrine of res judicata has two separate aspects—(1) merger or bar; and (2) collateral estoppel." *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 703 (Minn.1982) (footnote and citation omitted). Merger or bar prevents a party from relitigating a claim which has been litigated in a prior action. *See* Restatement (Second) of Judgments §§ 18, 19 (1980). Collateral estoppel, which has also been referred to as "issue preclusion," *see Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978), is the branch of *res judicata* that the Referee seeks to apply, thereby prohibiting Morris from relitigating the is-

sues of whether she suppressed exculpatory evidence and violated the court's sequestration order.

Collateral estoppel precludes relitigation "of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment." *Ellis*, 319 N.W.2d at 704; *see* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[1], at 759 (2d ed. 1948). Its application is appropriate when:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis*, 319 N.W.2d at 704 (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979)).

This court has stated "that res judicata applies 'in spirit at least' where an [administrative] agency acts in a judicial or quasi judicial capacity." *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.*, 356 N.W.2d 295, 299 (Minn.1984) (citing *Souden v. Hopkins Motor Sales, Inc.*, 289 Minn. 138, 146, 182 N.W.2d 668, 672 (1971); *McKee v. County of Ramsey*, 310 Minn. 192, 194 n. 1, 245 N.W.2d 460, 462 n. 1 (1976)). Here, the governor is clearly acting in a judicial or quasi-judicial capacity, *see State ex rel. Birkeland v. Christianson*, 179 Minn. 337, 229 N.W. 313 (1930) (quasi-judicial); *State ex rel. Kinsella v. Eberhart*, 116 Minn. 313, 133 N.W. 857 (1911) (judicial), and, therefore, collateral estoppel may apply if it is appropriate. *Res judicata*, however, is not rigidly applied. *AFSCME*, 356 N.W.2d at 299.

Clearly, Morris was a party to the prior proceeding and had an opportunity to be heard. She was present and testified, she was represented by counsel, and she had an opportunity for argument. The witnesses before the Commission were also subject to both examination and cross-examination.

Some of the issues are also identical because the Director's allegations are based on the Commission's findings, but those acts that the Commission found to be malfeasance do not necessarily constitute violations of disciplinary rules.

One factor enumerated in *Ellis* that may not be met here is the requirement of a final judgment on the merits. "It is the adjudication which operates as a bar and without it a verdict or finding is not of that effect." *State v. Brooks-Scanlan Lumber Co.*, 137 Minn. 71, 72, 162 N.W. 1054, 1054 (1917). The governor's decision not to remove Morris, however, lacks the requisites of a formal adjudication—it was not in writing, it was not filed, and it was not served on Morris. The findings that Morris committed misconduct are also unnecessary to the governor's decision. He did not remove her from office, which is the action he would also have taken if he had rejected the Commission's findings that she committed malfeasance. This court has stated that " '[a] former verdict is conclusive only as to facts directly and distinctly put in issue and the finding on which is necessary to uphold the judgment.' " *Smith v. Smith*, 235 Minn. 412, 420, 51 N.W.2d 276, 280 (1952) (quoting 1 Freeman on Judgments, § 257). Here, the findings that Morris wrongfully withheld exculpatory evidence and violated the sequestration order are certainly not necessary to uphold the decision to keep her in office.

The Director is attempting to use collateral estoppel offensively to preclude Morris from relitigating these issues. The United States Supreme Court has observed that "[i]n both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Nevertheless, several reasons have been advanced why the two situations should be treated differently." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). Offensive collateral estoppel is likely to increase the total amount of litigation and may be unfair to the defendant.

*Id.* at 330, 99 S.Ct. at 651. Such unfairness may result if the second proceeding was not foreseeable, if the judgment relied on is inconsistent with previous judgments in favor of defendant, or if different procedures apply in the subsequent action. *Id.* at 330–31, 99 S.Ct. at 651–52. It is arguable that Morris may not have foreseen this disciplinary action, and, therefore, since the governor's decision was in her favor, she had little incentive to challenge the Commission's findings which the governor may or may not have adopted.

The Referee claims that his decision that Morris was precluded from relitigating the misconduct issues is supported by three public policies underlying the doctrine of *res judicata.* They are:

1. The enhancement of judicial economy through the avoidance of repetitious trials.

2. The prevention of conflicting adjudications, and the resulting discredit on our system of justice.

3. The foreclosure of future litigation by final determinations.

The first of these policies is certainly served by the Referee's order. It is also served by a procedure adopted in other jurisdictions in disciplinary proceedings of allowing the transcript of the prior action into evidence and allowing the parties to supplement it. *See, e.g., Committee on Professional Ethics v. Wright,* 178 N.W.2d 749 (Iowa 1970); *In re Santosuosso,* 318 Mass. 489, 62 N.E.2d 105 (1945); *In re Strong,* 616 P.2d 583 (Utah 1980).

The second policy reason—avoiding inconsistent adjudications—also seems less strong in attorney disciplinary cases which are *sui generis* and in which this court is the final arbiter. Rule 19(a), Rules on Lawyers Professional Responsibility (RLPR), provides only that a lawyer's criminal conviction is conclusive. This court has also disciplined attorneys for conduct of which they had earlier been found not guilty, *see, e.g., In re Heinze,* 233 Minn. 391, 47 N.W.2d 123 (1951), or were not indicted, *see, e.g., In re Forbes,* 192 Minn.

544, 257 N.W. 329 (1934). These decisions, although a result of the differing burdens of proof, do appear to be conflicting adjudications. *See also AFSCME Council 96 v. Arrowhead Regional Corrections Bd.,* 356 N.W.2d 295 (Minn.1984) (allowing both veterans preference hearing and arbitration hearing despite possibility of inconsistent adjudications).

We hold that the Referee should not have given the Commission's findings collateral estoppel effect. The interest in judicial economy, a strong reason for applying collateral estoppel, can also be served by allowing into evidence the transcript of the Commission hearing and having the Referee make findings based on the transcript and any other evidence presented. *See Committee on Professional Ethics v. Wright,* 178 N.W.2d 749, 750 (Iowa 1970). In that case, the respondent objected to introduction of transcript of a civil fraud case, but the Iowa Supreme Court held:

> The conclusions reached by the jury and our affirmation in the prior civil case are not binding or conclusive on the issues examined here. But the parties may introduce the entire transcript of the prior case in which the respondent was a party.

*Id.* We adopt a similar procedure for dealing with the prior Commission hearing. The transcript of the Commission hearing and the Commission's report are admissible. Further testimony should not duplicate that record, but Morris may supplement the record as counsel suggested at oral argument—by presenting the testimony of an expert in discovery matters and a minimum of new witnesses.

Reversed and remanded.