**In re Shannon WILCOX and Cynthia Wilcox, Debtors.**

**Bankruptcy No. 95–10743.**

United States Bankruptcy Court, D. Maine.

May 17, 1996.

Martha Grant, Trustee, Fort Fairfield, ME.

Francis Bemis, Presque Isle, ME.

Norman Trask, Presque Isle, ME, for debtors.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Before me on a stipulated record is the Chapter 7 trustee's objection to Sibyl Higgs' secured claim insofar as it extends to funds she paid Fleet Bank of Maine in satisfaction of its first mortgage on the debtors' real property. The trustee concedes that Ms. Higgs has a valid claim as subrogee, but argues that the claim cannot be a secured claim because Fleet, rather than assigning its mortgage to Higgs, discharged it prior to the debtors' bankruptcy filing. For the reasons set forth below, I agree with the trustee.

### Facts

In 1989, Higgs and Donnie L. Wilcox purchased real estate in Ashland, Maine, financing their purchase with a mortgage loan from Fleet Bank. Fleet obtained a first mortgage to secure its $14,250.64 note from Higgs and Wilcox. Subsequently, Higgs obtained Wilcox's interest in the property.

In May 1991, Higgs conveyed her interest in the property to her grandson, Shannon Wilcox, and his wife, Cynthia Wilcox. The conveyance was made subject to Fleet Bank's first mortgage. Shannon and Cynthia agreed to pay Fleet. They obtained second mortgage financing from Higgs in the amount of $7,000.00.[1]

---

1. The trustee does not challenge Higgs' secured claim for $4,500.00, the balance due on her second mortgage note.

In July 1995, Shannon told Higgs that he could no longer pay his mortgage obligations and that he had defaulted on Fleet's note. Fearing that her interests might be foreclosed, Higgs paid Fleet $8,369.51, the entire balance due on the first mortgage, on July 31, 1995. In consideration of the payment, Fleet discharged its mortgage. Higgs, a 71–year old woman, did not consult counsel when she paid off Fleet.

Shannon and Cynthia filed a voluntary Chapter 7 petition on September 25, 1995. On the date of filing, Higgs' second mortgage was the senior mortgage encumbrance on the property.

### Discussion

■■■ Higgs' claim is made by way of subrogation, a status expressly recognized by Bankruptcy Code § 509(a).[2] Subrogation permits one who pays another's debt to stand in the shoes of the party who received payment and to assert whatever rights that party held. *In re Topgallant Lines Inc.*, 154 B.R. 368, 381 (S.D.Ga.1993), *aff'd sub nom., McAllister Towing v. Ambassador*, 20 F.3d 1175 (11th Cir.1994) (citing *In re Denby Stores, Inc.*, 86 B.R. 768, 775 (Bankr. S.D.N.Y.1988) and *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190

(1962)). Treatment of subrogation claims can be problematic in some contexts.[3]

The trustee does not contest Higgs' right to subrogee status here.[4] The only issue before me is whether, notwithstanding the fact that the bank's mortgage was discharged before the bankruptcy filing, the doctrine of subrogation entitles Higgs not only to an unsecured claim for the amounts she paid Fleet, but to assert to Fleet's mortgagee status, as well.

She cannot do so. Fleet discharged its mortgage before the bankruptcy filing. It discarded its "secured shoes." Higgs may not step into them now.

During the period following discharge of Fleet's first mortgage, neither Fleet nor Higgs held an interest in the debtors' property that could defeat the rights of a lien creditor against or a bona fide purchaser of the property. *Cf.* 11 U.S.C. § 544(a) (trustee's strong arm powers). On the date of bankruptcy, no basis for a secured claim based on Fleet's mortgage existed. *Cf.* 11 U.S.C. § 506(a).

Higgs' contention is that, upon the debtors' bankruptcy filing, § 509(a) resurrected Fleet's mortgage to secure her subrogation rights. That would be a perverse turn, indeed. The Code favors equal distribution among like-situated creditors.[5]

**2.** Section 509(a) provides:
(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
Subsection (b) and (c)'s exceptions are not pertinent here.

**3.** For example, the relationship between subrogation claims and distributional priorities has been a fertile ground for debate. *See* 11 U.S.C. § 507(d); *See generally* 2 *Norton Bankruptcy Law & Practice 2d* § 41:28 at 41–44, § 42:46 (1994 & Supp.1995) [hereinafter *"Norton"*]. The question whether a letter of credit issuer is upon payment subrogated to the rights of the letter of credit beneficiary has also divided the courts. *See CCF, Inc., v. First Nat'l Bank & Trust Co. (In re Slamans)*, 69 F.3d 468 (10th Cir.1996) (collecting cases and holding that letter of credit issuer cannot be subrogee because it is "not liable with" the debtor on the underlying contract).

**4.** Accordingly, it is unnecessary for me to address whether Higgs was "liable with" the debt-

ors on the first mortgage note as § 509(a) requires or whether one who pays a third-party's claim in full before the date of the petition can assert a subrogation claim. *Compare Stephenson v. Salisbury (In re Corland Corp.)*, 967 F.2d 1069, 1078 (5th Cir.1992) (stating that prepetition payment in full defeats the right of subrogation) (citing with approval 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 509.02 at 509–6 to –7 (15th ed. 1992)) *with In re Sensor Systems, Inc.*, 79 B.R. 623, 625 (Bankr.E.D.Pa.1987) (holding that payment in full before bankruptcy does not defeat subrogation and criticizing *Collier*).

**5.** *See generally Darr v. Muratore*, 8 F.3d 854, 860 (1st Cir.1993) (stating that the right of set-off is not automatic because in some instances it "undermines a basic premise of bankruptcy law, equality among creditors"); 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 1300.45 at 1300–45 (15th ed. 1995) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., at 340 for the proposition that "[b]ankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally"); 2 *Norton* § 36:4 at 367 ("The stay is also intended to protect creditors by pro-

Bankruptcy Code cases recognize that the extent of a subrogee's secured claim is determined by the existence and value of rights securing the debtor's obligation as of the date of bankruptcy. *Official Unsecured Creditors Comm. v. U.S. Nat'l Bank (In re Sufolla, Inc.)*, 2 F.3d 977, 985 (9th Cir.1993) (explaining bifurcation of claims concept in context of trilateral preference analysis); *Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Services, Inc.)*, 980 F.2d 792, 803 n. 19 (1st Cir.1992) (same); *In re Topgallant Lines Inc.*, 154 B.R. at 381 (alternative holding that the codebtor could not acquire through subrogation creditor's prior secured status where the creditor had discharged its lien prior to bankruptcy and citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) for the proposition that "'one cannot acquire by subrogation what another whose rights he claims did not have.'"); *see also In re Sensor Systems, Inc.*, 79 B.R. at 626.[6]

Fleet's discharged mortgage provides Higgs' unsecured subrogation claim no traction to step over other unsecured creditors. Higgs could have protected her position by taking an assignment of the Fleet mortgage when she paid it off. That she failed to do.

### Conclusion

For the reasons set forth above, Sibyl Higgs' secured claim as subrogee based on her satisfaction of Fleet's first mortgage is DISALLOWED.

moting the bankruptcy policy of equality of distribution amongst claimants").

**6.** Higgs has cited but one case to the contrary: *Yonack v. Interstate Securities Co.*, 217 F.2d 649 (5th Cir.1954). *Yonack*, a Bankruptcy Act case, did not discuss the interplay of the trustee's "strong arm" powers and recognition of secured status notwithstanding pre-bankruptcy discharge of the third party creditor's security interest. Its exclusive reliance upon (Texas) state law principles "peculiarly hospitable" to the right of subrogation is inappropriate. *Cf., e.g., Creditor's Comm. v. Massachusetts Dep't of Revenue*, 105

B.R. 145, 148 n. 3 (D.Mass.1989) (subrogation under § 509(a) is a federally-created right to which state law is irrelevant). Moreover, *Yonack*'s holding appears inconsistent with the more recent decision in *In re Corland Corp.*, where the Fifth Circuit indicated that payment in full of a third party creditor before bankruptcy will defeat § 509(a) subrogation rights altogether. 967 F.2d at 1078. A creditor's security interest would be fully discharged prepetition only in instances where the creditor was fully paid prepetition, as it was in *Yonack*. 217 F.2d at 651.