NORTHWESTERN NATIONAL LIFE
INSURANCE CO., Relator,

v.

COUNTY OF HENNEPIN, Respondent.

No. C2–97–90.

Supreme Court of Minnesota.

Dec. 31, 1997.

Rehearing Denied Feb. 5, 1998.

Fredrikson & Byron, P.A., Thomas R. Wilhelmy, Thomas R. Muck, Minneapolis, for relator.

Michael O. Freeman, Hennepin County Atty., Mark K. Maher, Asst. County Atty., Minneapolis, for respondent.

## OPINION

PAGE, Justice.

Pursuant to Minnesota Statutes Chapter 278 (1996), Relator Northwestern National Life Insurance Company filed petitions with the tax court challenging Respondent Hennepin County's 1993 and 1994 assessments of Northwestern National's property, consisting of an office building and data center located at 111 Washington Avenue South in Minneapolis ("the subject property"). On August 27, 1996, the tax court filed its findings of fact, conclusions of law and order for judgment in this matter and determined that the property's fair market value for 1993 was $23,000,000 and for 1994 was $25,000,000. Northwestern National timely moved the tax court for amended findings or a new trial. The tax court denied the motions, and this court granted Northwestern National's petition for certiorari.

Northwestern National raises essentially the same issues here that it raised in its post-trial motions to the tax court: (1) whether the tax court clearly erred in finding that the doctrine of collateral estoppel was inapplicable to this case; (2) whether the tax court clearly erred in finding that the building's raised, removable computer flooring and cooling, electrical, and fire control equipment (collectively "the data center components") were real property rather than personal property; (3) whether the tax court denied Northwestern National due process by allowing the County to use information at trial, that the County failed to provide in advance of the trial, pursuant to Northwestern National's discovery requests; (4) whether the tax court clearly erred in using a 12% yield rate in its income approach to valuation; (5) whether the tax court abused its discretion in limiting Northwestern National's cross-examination of a co-author of the appraisal report relied on by the County's assessor; and (6) whether the tax court's conclusions as to market net rent and vacancies are unsupported by the evidence and thus clearly erroneous. We affirm in part, reverse in part, and remand.

The subject property is improved with a mid-rise building which was built by Northwestern National in 1987. The building includes 15 stories of office space above ground and a two-level data center below ground. The data center floors, which were designed to be removable, are raised 21 inches above a subfloor, and the floors in the office space are raised 9 inches. When constructed, a halon fire control system was built into the data center, along with additional electrical support and cooling equipment required by the data center's computers.

Due to the inexact nature of property assessment, this court defers to the decision of the tax court unless it has clearly misvalued the property or completely failed to explain its reasoning. *Harold Chevrolet v. County of Hennepin*, 526 N.W.2d 54, 58 (Minn.1995). We will not disturb the tax court's valuation of property unless the tax court's decision is clearly erroneous. *Id.* at 57. A decision is clearly erroneous when it is not reasonably supported by the evidence as a whole. *Westling v. County of Mille Lacs*, 512 N.W.2d 863, 866 (Minn.1994) (citation omitted). When questions of law arise, this court has plenary powers to review the tax court's decision. *Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984).

The first issue raised by Northwestern National is whether the tax court erred in finding that the doctrine of collateral estoppel was inapplicable to this case. In 1995, Northwestern National successfully challenged the County's 1992 valuation of the subject property. *See Northwestern National Life Insurance Company v. County of*

*Hennepin* (*NWNL I* ), File No. TC–18794, 1995 WL 377079 (Minn. Tax Ct. June 21, 1995). In appraising the subject property, in *NWNL I,* the County used the income, market, and cost approaches to valuation. In its cost approach, the County used a "Marshall Valuation segregated replacement cost analysis" to estimate the historical[1] cost of constructing the office building and data center. In its estimate of the construction cost of the office building and data center, the County included the cost of the data center components. In the appraisal report introduced in *NWNL I,* the County included Exhibit A in support of its segregated replacement cost analysis. Exhibit A was a document provided to the County by Northwestern National that showed in summary form the contract amount for the construction of the office building and data center, reduced by the cost of the data center components, certain personal property, and other miscellaneous items. Exhibit A showed an adjusted construction cost of $42,157,784. The County's appraiser testified that in performing the segregated replacement cost analysis, he used the information contained on Exhibit A for comparison purposes only. Northwestern National did not perform a cost approach to valuation. Thus, in *NWNL I,* Northwestern National did not introduce any evidence relating to the construction cost of the office building and data center. The tax court, without explaining what items were included in or excluded from the construction cost, and without any other explanation as to what its finding was based on, found that the construction cost of the office building and data center was $42,000,000. The tax court also found that the market value of the property for 1992 was $19,600,000.

At the tax court in this case, both Northwestern National and the County used the income, market, and cost approaches to value the subject property. In using the cost approach, rather than estimating, the parties began with the actual construction cost of the office building and data center and then trended that cost forward. The County, in its cost approach, again included the cost of the data center components in the construction cost of the office building and data center, but this time the figures were based on actual cost rather than an estimate. In its cost approach, Northwestern National excluded the cost of the data center components from the construction cost.

Prior to trial, Northwestern National raised the issue of whether the County should be estopped from relitigating the issue of construction cost. The tax court found that the doctrine of collateral estoppel did not apply based on its conclusion that the issue of construction cost was not actually litigated in *NWNL I.* The tax court then found, for purposes of its cost approach to valuation, that the construction cost of the office building and data center was $49,800,-000 which was $7,800,000 more than what the tax court found in *NWNL I.* Ultimately, the tax court found that the market value of the subject property for 1993 and 1994 was $23,000,000 and $25,000,000 respectively. In determining market value for 1993 and 1994, the tax court indicated that it placed "little weight" on the market approach[2] to valuation, placed "significant weight" on the income approach, and placed "significantly less weight" on the cost approach than it did in *NWNL I.*

As it did at the tax court, Northwestern National again raises the issue of whether the County should be estopped from relitigating the issue of construction cost. The doctrine of collateral estoppel is employed to prevent "parties to an action from relitigating in subsequent actions issues that were determined in the prior action." *In Re Special Assessment for Water Main Extension in the Village of Byron,* 255 N.W.2d 226, 228 (Minn.1977).[3] Collateral estoppel applies

---

1. The tax court and the parties appear to use the term "historical cost" interchangeably with "construction cost." For ease of discussion, we shall use the term "construction cost."

2. In its post-trial memorandum supporting its order denying Northwestern National's motion for amended findings or for a new trial, the tax court stated that it placed no weight on the market approach.

3. We note that this case has been improperly cited in prior opinions as *In Re Village of Byron,* 255 N.W.2d 226, 228 (Minn.1977).

when the following elements have been satisfied: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Willems v. Commissioner of Public Safety*, 333 N.W.2d 619, 621 (Minn.1983) (citations omitted).

In *NWNL I*, the tax court found as a fact that the construction cost of the office building and data center was $42,000,000. That finding of fact was not appealed by either party. In this case, the tax court found as a fact that the construction cost of that same office building and data center was $49,800,-000. By doing so, the tax court erred. In *In Re Special Assessment for Water Main Extension in the Village of Byron*, we concluded that a party was estopped from relitigating the issue of the number of acres comprising the assessed property because that "issue [was] necessarily * * * determined by the findings of fact in the first appeal." 255 N.W.2d at 228. The same is true here. Once finally determined, the construction cost cannot change. If the County, at the time of *NWNL I*, believed the tax court's finding of fact with respect to the construction cost of the office building and data center was in error, the proper procedure would have been for the County to take steps to appeal that finding, not seek a different finding in a subsequent proceeding.

█ We conclude that the doctrine of collateral estoppel is applicable to this case and the County is estopped from relitigating the issue of the office building and data center's construction cost.[4] Because the tax court erred in using the construction cost figure of $49,800,000 in its cost approach to valuation, and because the tax court placed some weight, albeit "significantly less weight" than

in *NWNL I*, on the cost approach, we remand to the tax court for a determination of what effect, if any, the error had on its determination of the subject property's market value for 1993 and 1994.

The next issue we address is whether Northwestern National was denied due process by the tax court and is therefore entitled to a new trial. Prior to trial, Northwestern National sought discovery of certain information, contained in documents in the County's possession, relating to any of 122 listed office building sales within the county on or after January 1, 1989. The County objected to the request as being vague and overbroad and agreed to provide certificates of value and verification information that was not privileged if Northwestern National narrowed its discovery request. Northwestern National narrowed its request to a list of 20 specific building sales and the County provided the requested documents. However, in providing the documents, the County redacted what it considered to be nonpublic information, including information regarding yield rates and capitalization rates, without informing Northwestern National that the information had been redacted and without claiming any privilege for doing so.

Northwestern National claims that it did not discover that the information had been redacted until shortly before trial. As a result, Northwestern National moved the tax court, requesting that the County's expert not be permitted to use the redacted information in his testimony. In the alternative, Northwestern National asked that it be given unredacted copies of the documents and sufficient time prior to trial to allow for "adequate analysis." In denying Northwestern National's motion, the tax court allowed the County's expert to use the information at trial, but, pursuant to the parties' stipulation,[5] ordered the County to deliver unre-

---

4. Based on our conclusion that the County is estopped from relitigating the issue of construction cost, the second issue raised by Northwestern National regarding whether the tax court clearly erred in finding that the data center components were real property rather than personal property is moot.

5. On February 22, 1996, five days before trial, a hearing was held before the tax court regarding

a motion to intervene brought by 601 Second Avenue Limited Partnership. The partnership claimed that, relative to its building, the County's proposed use of certain information was a violation of the Data Practices Act. As a way of resolving this issue, the parties, including both the County and Northwestern National, stipulated to how the information was to be used at trial and to sealing portions of the trial tran-

dacted copies of the documents to Northwestern National during the trial.

■ In its post-trial motion to the tax court, Northwestern National claimed that it was denied due process when the tax court permitted the County to use the redacted information at trial. In denying that motion, the tax court stated that while the County did not clearly state a privilege permitting it to withhold the information, Northwestern National was not prejudiced by the County's use of the information because Northwestern National acknowledged that it had sufficient time to prepare for cross-examination of the County's expert, and "[s]ince we placed no weight upon the market approach, * * * [Northwestern National] was not prejudiced * * * ."

■ Based on the facts before us, we conclude that the tax court erred when it permitted the County to use, at trial, information which Northwestern National had requested through discovery, but which the County did not provide until the day of trial. Reaching that conclusion, however, does not end our inquiry. There remains the question of whether Northwestern National was materially prejudiced by the tax court's error. *See* Minn. R. Civ. P. 61 (specifying harmless error analysis before granting a new trial). We conclude it was not. The redacted information was relevant to the market approach to valuation, and Northwestern National claims that the redacted information would have been helpful in preparing its market approach. However, had Northwestern National had the redacted information in advance of trial, or had the County not been permitted to use the information at trial, the tax court's findings as to the subject property's market value would not likely have been different. That is so because, due to unstable market conditions, the tax court placed little, if any, weight on the market approach to valuation. Thus, Northwestern National was not materially prejudiced by the tax court's error.

We have reviewed the record and thoroughly considered the other issues raised by Northwestern National in its petition and conclude that the tax court was not clearly erroneous in its findings with respect to those issues, nor did it abuse its discretion.

Affirmed in part, reversed in part, and remanded.

script. From the record, it appears that the stipulation included that all of the unredacted documents would be provided, but would not be removed from the courtroom. Therefore, the tax

court decided that Relator could review the documents in the courtroom before 9:00 a.m. or after 4:30 p.m. and when trial was not in session.