**In re Bruce D. YANKE, Debtor.**

**MINNESOTA TRUST COMPANY OF AUSTIN, Plaintiff,**

v.

**Bruce D. YANKE, Defendant.**

**Bankruptcy No. 97–38025.
Adversary No. 98–3003.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 14, 1998.

---

430

Michael S. Dietz, Dunlap & Seeger, P.A., Rochester, MN, for defendant.

Paul R. Spyhalski, W.F. Plunkett & Associates, Austin, MN, for plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on May 26, 1998, for hearing on the parties' cross-motions for summary judgment. The Plaintiff appeared by its attorney, Paul R. Spyhalski. The Defendant appeared by his attorney, Michael S. Dietz. Upon the parties' motions, the supporting affidavits and exhibits, and counsel's memoranda and argument, the Court grants the Plaintiff's motion and denies the Defendant's motion.

### INTRODUCTION

In this adversary proceeding, the Plaintiff seeks two different adjudications: that the Defendant is indebted to it in the sum of

$191,806.14, and that that debt was excepted from the discharge under Chapter 7 that the Defendant received in BKY 97–38025 on March 25, 1998. The latter request sounds under 11 U.S.C. § 523(a)(4).[1]

Both parties have moved for summary judgment. The Plaintiff argues that the underlying debt is established by applying the principles of subrogation and contractual guaranty to findings and rulings that were made against the Defendant in a guardianship proceeding in the Minnesota state courts. It then argues that the same findings and rulings preclude the Defendant from denying the nondischargeability of the debt. For his own part, the Defendant maintains that the principles of satisfaction and/or release now bar the Plaintiff from recovery on account of the debt under any theory, mooting the issue of dischargeability. In the alternative, he argues that collateral estoppel does not lie, because the alignment of parties here is different from that in the state court.

The Plaintiff supports its motion by reciting numerous facts and circumstances, most of them evidenced by the state court's record and findings. The Defendant tacitly stipulates to this recitation; he has not denied the cited facts and has not opposed the Plaintiff's reliance on them.

## THE UNCONTROVERTED FACTS: THE PARTIES, THEIR RELATIONSHIP, AND THEIR TRANSACTIONS

The legal relationship of the Plaintiff and the Defendant was centered on one Michelle Ann Yanke Beckman Laganiere. Laganiere was the ward in a guardianship proceeding commenced in the Probate Division of the Minnesota State District Court for the Third Judicial District, Freeborn County. The Defendant was appointed as guardian of the person and estate of Laganiere in early 1993, when she was still a minor. To secure the issuance of letters of guardianship, the Defendant obtained a bond in the face amount of $700,000.00 from the Plaintiff. To obtain the issuance of the bond, the Defendant

signed a guaranty in favor of the Plaintiff; under it, he committed to repay the Plaintiff all sums that it might be required to pay as surety. Laganiere's guardianship estate had a balance of $655,876.62 when the Defendant assumed his duties.

The Defendant's status as guardian was terminated in February, 1995. By then, the balance in the guardianship estate was substantially lower. Alleging that the Defendant had breached his duty to the estate, Laganiere sought to recover the deficiency from him through a motion brought in the guardianship proceeding.

The Plaintiff defended its and the Defendant's interests in the motion. After an evidentiary hearing, the Freeborn County District Court entered Findings of Fact, Conclusions of Law, and an Order for Judgment on January 26, 1996. After finding that the Defendant had overcompensated himself and had expended funds of the guardianship estate in excessive amounts and for inappropriate and unreasonable purposes, the state court concluded:

1. The Defendant, as guardian, breached his duty to act as a guardian of the person and estate of Laganiere.

2. The Defendant breached his duty to appropriately manage, possess, and care for funds of the estate, and his duty to use those funds in a reasonable fashion for the care and protection of Laganiere.

3. The Defendant had failed to account for certain funds from the estate, and had breached a duty to do so.

4. All told, the Defendant had an obligation to reimburse the guardianship estate, or Laganiere, the sum of $179,-682.22.

5. The bond of the Plaintiff "should be forfeited in that amount," and judgment was to be entered against the Defendant and the Plaintiff in that amount.

---

1. In pertinent part, this statute provides:
 A discharge under [11 U.S.C. § ] 727 ... does not discharge an individual debtor from any debt–

 . . .
 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny
 . . .

6. Laganiere was entitled to recover her costs and disbursements against the Defendant and the Plaintiff.

On January 30, 1996, the clerk of the Freeborn County District Court duly entered judgment pursuant to the order.

The Plaintiff took an appeal from the judgment, but was unsuccessful. In mid-January, 1997, it paid Laganiere the sum of $191,806.14, inclusive of costs, disbursements, and interest. On January 14, 1997, Laganiere's counsel executed a satisfaction of judgment. On its face, this document recites that the judgment had been entered in favor of Laganiere and against the Defendant and the Plaintiff, and that the judgment had been paid and satisfied in full. On January 15, 1997, Laganiere executed a release of liability. This document names the Plaintiff as the sole party released; it recites its subject as "any and all claims known or unknown, and any actions or causes of action in any way arising out of or connected with the lawsuit entitled In re: Guardianship of Michelle Ann Yanke Beckman Laganiere ...," as well as any further liability on the surety bond the Plaintiff had issued in favor of the Defendant.

Seeking to recover the amount it had paid to Laganiere, the Plaintiff commenced a lawsuit against the Defendant and another guarantor on the bond. That lawsuit was pending in the Minnesota State District Court for the Third Judicial District, Mower County, when the Defendant filed for bankruptcy on December 9, 1997.

## DISCUSSION

### I. Standards for Summary Judgment

 Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), as incorporated by Fed.R.Bankr.P. 7056.[2] Where the parties stipulate to all of the material facts, disposition of a dispute on summary judgment is particularly appropri-

ate. E.g., W.S.A., Inc. v. Liberty Mut. Ins. Co., 7 F.3d 788, 790 (8th Cir.1993); Coca-Cola Bottling Co. v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440 (8th Cir.1992). In addition, summary adjudication is warranted where the material facts have been settled by a final order or judgment entered in an earlier proceeding, in the same or another forum, and the only question remaining is the application of different substantive law to those established facts. This principle–"issue preclusion" or collateral estoppel–applies in dischargeability proceedings in bankruptcy. Grogan v. Garner, 498 U.S. 279, 284–285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### II. The Substantive Issues

The Plaintiff maintains that it is entitled to judgment "as a matter of law" on all aspects of its theory of recovery against the Defendant. That theory is summarized as follows: The Freeborn County District Court fixed and liquidated the Plaintiff's and the Defendant's joint and several liability to Laganiere. The Plaintiff then paid and satisfied that liability in full. Both via contractual guaranty and via subrogation, the Defendant is liable to the Plaintiff for the amount that it paid to Laganiere. Because the debt arose out of an adjudicated breach of a pre-existing fiduciary duty to Laganiere, and because the Plaintiff is subrogated to all of Laganiere's rights, the debt falls nominally within the scope of § 523(a)(4). In turn, because the Defendant was a party to the state court proceeding in which his breach of fiduciary duty was adjudicated, he is bound by that court's findings and conclusions, and the debt is excepted from discharge as a matter of law.

The Defendant's response is four-fold in nature. First, he maintains that there was no fiduciary relationship running between himself and the Plaintiff when he filed for

---

2. This rule provides that, on a motion for summary judgment,

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The governing substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

bankruptcy; their sole legal relationship was under his personal guaranty, where the debt is purely contractual in origin and nature. Second, he argues that the Plaintiff's right to be subrogated to Laganiere's position was extinguished when it satisfied Laganiere's judgment. Third, the Defendant points out that governing precedent under § 523(a)(4) requires a fiduciary duty to the suing plaintiff that pre-existed the debtor's defalcation. He argues that the Plaintiff had no right to assert the status of complainant, and no right to the vindication of a beneficiary's interest, until it had paid Laganiere and was subrogated–long after the acts alleged to have been a defalcation. Finally, he argues that collateral estoppel cannot lie on the state court's determinations, as "[t]he parties are different and the issue [sic] are different."

### III. Treatment of Substantive Issues

Three of the Defendant's four theories go directly to the Plaintiff's asserted status of subrogee; the Defendant acknowledges the existence of the bond, the adjudication of liability, and the Plaintiff's payment of the debt as surety, but he argues that other aspects of the events prohibit the Plaintiff from now asserting the status of party-plaintiff. On the pared-back facts just recited, the three theories present issues purely of law.

Under two of them, the Defendant denies that the Plaintiff has any state-law right to recover from him at all, regardless of the state court's adjudications. Under the third, he denies that the Plaintiff has any right to have a debt running from him excepted from discharge. All of these are threshold matters going to the Plaintiff's standing as an aggrieved party under state law and the Bankruptcy Code, and it is most appropriate to treat them first.

### A. Nature of Parties' Relationship

The Defendant posits that the Plaintiff has advanced no theory under which it is directly in a fiduciary capacity with [the Defendant]. In fact, its sole relationship with [the Defendant] is under the Guaranty Agreement. Accordingly [the Plaintiff] stands in a contractual relationship with the [Defendant], not a fiduciary one.

This argument substantially misapprehends the nature of the parties' relationship as debtor and creditor, by not recognizing it as a dual one. As the Defendant admits, a debt did arise under his guaranty, as a matter of contract, and it has been fixed and liquidated. However, to an identical result in terms of financial liability, the obligee's status under the original claim for breach of fiduciary duty has transferred from Laganiere to the Plaintiff under the principles of subrogation.

Subrogation permits one who pays another's debt to stand in the shoes of the party that received the payment, and to assert whatever rights that party had. *In re Wilcox*, 196 B.R. 212, 213 (Bankr.D.Me.1996) (collecting cases). In Minnesota it has long been recognized that

> when a surety pays the obligation of his principal for which he is surety, he is subrogated to the remedies of the obligee in the bond and may pursue such remedies until met by equal or superior equities in the one sued.

*Nat'l Surety Co. v. Webster Lumber Co.*, 187 Minn. 50, 244 N.W. 290, 293 (1932).[3] The object of subrogation is to place the charge where it ought to rest, by compelling the payment of the debt by the party that ought in equity to pay for it. *Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983); *Northern Trust Co. v. Consolidated Elevator Co.*, 142 Minn. 132, 171 N.W. 265, 268 (1919). The Bankruptcy Court dispenses substantial equitable remedies, and can scarcely ignore the operation of subrogation in favor of a surety. Once that operation is recognized, it follows:

> Payment by a surety, although it extinguishes the remedy and discharges the security as respects the creditor, does not have that effect as between the surety and

---

**3.** The same principle applies to the case of insurer, insured, and tortfeasor:

> It is the universal rule that upon payment of a loss, an insurer is entitled to pursue those rights which the insured may have against a

third party whose negligence or wrongful act caused the loss.

*Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 291 Minn. 97, 189 N.W.2d 404, 406 (1971).

his principal. As between the latter, it is in the nature of a purchase by a surety from the creditor. It operates in equity as an assignment of the debt and securities. *Nat'l Surety Co. v. Webster Lumber Co.*, 244 N.W. at 293.

■ The debtor-creditor relationship of the parties, then, has two different legal characterizations: the one that runs directly between them via contract, and the one that the Plaintiff assumed when it performed its duty as surety. Under the latter, an unbroken chain of rights and duties extended from the relevant events to the Defendant's bankruptcy filing. This allows the Plaintiff to assert the status of the injured beneficiary-ward for all purposes, including the maintenance of a dischargeability proceeding under any law that protects a member of such a class. *Accord, In re Richardson*, 193 B.R. 378, 380–382 (D.D.C.1995), *aff'd*, 107 F.3d 923 (D.C.Cir.1997), *cert. den.*, —— U.S. ——, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997).

### B. Payment, Satisfaction, and Discharge Under State Law

■ The Defendant essentially argues that the Plaintiff destroyed its own right to subrogation, by paying Laganiere, procuring satisfaction of the judgment against both named parties, and obtaining her signature on the release. By these acts, he maintains, *Laganiere* extinguished all rights to pursue him, leaving the Plaintiff with nothing to enforce as subrogee. As authority, he cites the following principle of Minnesota subrogation law:

> The insurer, as subrogee is entitled to no greater rights than those which the insured-subrogor possesses at the time the subrogee asserts the claim, as the subrogee merely "steps into the shoes" of the subrogor.

*Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 189 N.W.2d at 406.

This argument fails for two reasons. First, though Laganiere satisfied the judgment in full, as rendered against both named parties, she formally released only the Plaintiff. This, obviously, was no accident. Once she received full satisfaction, Laganiere was legally bound to acknowledge that of record by satisfying the judgment. Because the Defendant tendered no part of the consideration, she had no duty to formally release him. The Plaintiff, of course, had every motivation to see that that was not done; to stretch the timeworn metaphor, so often cited as to be hackneyed, the Plaintiff deliberately left Laganiere's shoes open and empty for its own figurative feet.

■ The second reason is that the cited authority is inapposite. Though the same business entities often serve as insurers and sureties both, the alignment of parties in the two relationships gives rise to different legal consequences in subrogation. In the case of property and casualty insurance, the insurer indemnifies its *insured* from a loss, and upon payment gains the right to pursue the responsible third party. Under a bond, the surety indemnifies *third parties* from losses at the hands of its principal, and upon payment gains the right to recover from its own principal. In both cases, the principle of subrogation operates to the same end, as recognized earlier: preventing a wrongdoer from avoiding liability for his actions, while preserving the rights of the party that contractually accommodated its own client. *See Westendorf v. Stasson*, 330 N.W.2d at 703. The Defendant's citation to *Great Northern Oil Co.* is wrong, however, because Laganiere, and not the Defendant, was the party that the Plaintiff succeeded–and Laganiere did not release the Defendant.

### C. Existence of Pre-existing Trust Under Bankruptcy Law

■ The outcome on the defendant's first two theories perforce defeats him on his third. It is true, as the Defendant argues, that the fiduciary status contemplated by § 523(a)(4) is governed by federal law, and that that law requires the relationship to have sprung from an express or technical trust that was imposed before and without reference to the conduct that created the debt. *In re Cochrane*, 124 F.3d 978, 984 (8th Cir.1997), (citing *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir.1996)). Under the authorities noted earlier, however, the Plaintiff's status as aggrieved complainant under

§ 523(a)(4) did not spontaneously generate when it paid Laganiere; Laganiere's pre-existing status and rights passed to the Plaintiff without interruption. The Defendant's duties to Laganiere had arisen upon his full qualification and the issuance of his letters, and as a matter of statute. MINN. STAT. §§ 525.551 subd. 6 (letters of guardianship shall issue upon filing of bond and guardian's oath), 525.5515 subd. 2 (requirements for contents of letters of guardianship), 525.56 subd. 4 (setting forth duties of guardian of the estate of incapacitated person), and 525.619 (setting forth duties of guardian of the estate of minor). As successor-by-operation-of-law to Laganiere, the Plaintiff had the right to call the Defendant to account on any breach of those duties, and regardless of when he committed it. The timing of the Defendant's breaches in relation to the Plaintiff's assumption of standing is not relevant to the application of § 523(a)(4).

## D. Application of Collateral Estoppel

■ Rule 56 requires the Plaintiff to show that there are no genuine issues of material fact. To meet this burden, the Plaintiff points to the findings made by the Freeborn County District Court, and invokes the doctrine of collateral estoppel. Also known as "issue preclusion," this principle prohibits a party from relitigating issues of law or fact that were decided in an earlier action to which it was a party. *In re Miera*, 926 F.2d 741, 743 (8th Cir.1991); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983).

■ The Federal Full Faith and Credit Act, 28 U.S.C. § 1738,[4] requires this Court to apply the principles of collateral estoppel as the Minnesota state appellate courts have framed them. *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–482, 102 S.Ct. 1883, 72 L.Ed.2d 262

(1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *See, in general*, discussion in *In re Brandl*, 179 B.R. 620, 623–624 (Bankr.D.Minn.1995).

■ The Minnesota Supreme Court has generally identified the purpose of collateral estoppel:

> The doctrine ... is employed to prevent "parties to an action from relitigating in subsequent actions issues that were determined in the prior action."

*Northwestern Nat'l Life Ins. Co. v. County of Hennepin*, 572 N.W.2d 51, 53 (Minn.1997) (quoting *In re Special Assessment in Village of Byron*, 255 N.W.2d 226, 228 (Minn.1977)). *See also In re Morris*, 408 N.W.2d 859, 861–862 (Minn.1987). The elements are:

1. The issue in question was identical to one in a prior adjudication;

2. There was a final judgment on the merits;

3. The subject party was a party or in privity with a party to the prior adjudication; and

4. The subject party was given a full and fair opportunity to be heard on the adjudicated issue.

*Northwestern Nat'l Life Ins. Co. v. County of Hennepin*, 572 N.W.2d at 54; *Haavisto v. Perpich*, 520 N.W.2d 727, 731 (Minn.1994); *Willems v. Comm'r of Public Safety*, 333 N.W.2d 619, 621 (Minn.1983).

The courts have recognized two main types of collateral estoppel, distinguished by their use: defensive and offensive. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). *See, in general*, 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 132.04[2][c][i] (3d ed.1997). The Minnesota Supreme Court has recognized this distinction since 1969. *McCarty v. Budget–Rent–a–Car*, 282 Minn. 497, 165 N.W.2d 548, 550, 551 (1969); *Thill v. Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865, 870–871 (1969).[5]

---

4. This statute provides, in pertinent part, as follows:

> ... [J]udicial proceedings [of any court of any ... State] ... shall have the same full faith and credit in every court within the United States

... as they have by law or usage in the courts of such State ... from which they are taken.

5. The rationale of *McCarty* and *Thill* built on an earlier abrogation of the strict requirement of mutuality of parties in collateral estoppel. *See Gammel v. Ernst & Ernst*, 245 Minn. 249, 72

Offensive collateral estoppel arises where a plaintiff seeks to estop a defendant from relitigating an issue that the defendant previously litigated and lost against another plaintiff.

*Green v. City of Coon Rapids*, 485 N.W.2d 712, 718 (Minn.App.1992), *rev. den.* (Minn. June 30, 1992).

 From the first, the Minnesota courts have cautioned reserve in the application of nonmutual offensive issue preclusion. *McCarty v. Budget–Rent–a–Car*, 165 N.W.2d at 551 (court must "determine whether the one against whom the doctrine is to be applied has had full opportunity to litigate, with sufficient incentive to do so"). This variant of collateral estoppel may be denied where its use "may be unfair to the defendant." *In re Morris*, 408 N.W.2d at 862–863; *Green v. City of Coon Rapids*, 485 N.W.2d at 718. So far, the Minnesota courts have recognized four circumstances where such unfairness may result:

1. If the second proceeding was not foreseeable;
2. if the subject judgment is inconsistent with previous judgments in favor of the subject defendant;
3. if different procedures apply in the second proceeding; and
4. where the plaintiff "could have easily joined in the earlier action."

*In re Morris*, 408 N.W.2d at 863; *Falgren v. State Board of Teaching*, 545 N.W.2d 901, 906–907 (Minn.1996). These points, however, are subsidiaries to the general principle established several decades ago: where a defendant to a second suit has actively participated as a named party to an earlier action that resulted in a judgment adverse to it, and a second suit implicates the liability established in the first one, that defendant generally should be barred from relitigating the specific issues of fact and law that established its liability in the first action—even though the plaintiff in the second action was not a party-participant in the first. *Thill v.*

*Modern Erecting Co.*, 284 Minn. 508, 170 N.W.2d 865, 870–871.[6]

 That much is the general conceptual backdrop. The posture of the parties at bar, however, is a bit different from any in the reported decisions. Both the Plaintiff and the Defendant were named parties to the guardianship proceeding in the Freeborn County District Court. Then, they were jointly aligned against Laganiere. Their interests coincided—the Defendant's lying in defeating his primary liability, and the Plaintiff's in avoiding the call on its suretyship that would result if he did not. Their loss in this joint endeavor triggered a realignment of their interests, which fully activated when the Plaintiff began enforcing the guaranty and its right of subrogation. Because both parties intensively participated in the earlier litigation, albeit as allies, neither variant of collateral estoppel quite fits according to its enunciated terms.

However, the fact remains that the Defendant–the party now sought to be estopped–had his "full and fair opportunity to be heard" on the issue of breach of fiduciary duty. The existence of the guaranty foreordained the Plaintiff's effort to recover its outlay-as-surety from the Defendant. The legal nature of Laganiere's claims clearly raised the specter of nondischargeability in bankruptcy. It could scarcely be said that this adversary proceeding "was not foreseeable." There were no other proceedings by other claimants against the Defendant, and it really cannot be said that "different procedures apply in" this adversary proceeding. None of the recognized reasons to eschew the application of collateral estoppel are present.

To be sure, the Minnesota state courts have not yet treated collateral estoppel, offensive or defensive, where subject parties participated in successive actions but realigned between them. In the absence of on-point state court authority, however, a feder-

N.W.2d 364, 369–370 (1955); *Lustik v. Rankila*, 269 Minn. 515, 131 N.W.2d 741, 744–746 (1964).

**6.** The Defendant's objection to the use of collateral estoppel is literally as terse as presented

*supra* at p. 433. As a result, it is difficult to know whether he even conceives of the argument as couched in the technical terms just discussed. It seems to be what he is driving at, though, so it will be treated as such.

al court can divine "the optimal rule of collateral estoppel under the circumstances," with guidance from general and specific holdings like those summarized earlier, and then apply it. *Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir.1990); *Gerrard v. Larsen*, 517 F.2d 1127, 1132 (8th Cir.1975). Given the Minnesota courts' various pronouncements, and the Defendant's failure to make out any of the exceptions of *Morris* and *Falgren*, one can comfortably conclude that the Defendant is precluded from relitigating the issues of fact and law going to breach of fiduciary duty that the Freeborn County District Court decided.

■ That point settled, the rest is almost perfunctory.[7] Once the pre-existing and objectively-manifested fiduciary relationship contemplated by § 523(a)(4) is established, a "defalcation" is proven up by the simple failure to meet the duties imposed by nonbankruptcy law. *In re Cochrane*, 179 B.R. 628, 635 (Bankr.D.Minn.1995), *aff'd*, 124 F.3d at 984. The Freeborn County District Court's unadorned but unambiguous findings, affirmed on appeal, established that, at the very least. The Plaintiff is now estopped from denying this, either as a matter of fact or of law. *Id.*

### CONCLUSION

The Defendant had his full "day in court" on the underlying facts, in the guardianship proceeding. When he lost there, and the Plaintiff discharged its duty as surety, it assumed Laganiere's standing to pursue him in all respects. The sensitivity of the fiduciary relationship means that the burden of a plaintiff under § 523(a)(4) is relatively light, *In re Cochrane*, 179 B.R. at 634–635. The Plaintiff met that burden, by simply pointing to the state court's final adjudication. The Defendant's debt to the Plaintiff, then, is excepted from discharge in bankruptcy.

### ORDER FOR JUDGMENT

Upon the findings of fact and conclusions of law set forth in the foregoing memorandum,

---

7. The Defendant's arguments on the substantive application of collateral estoppel were brief,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The Plaintiff shall recover from the Defendant the sum of $191,806.14, together with such costs and disbursements as it may hereafter tax pursuant to applicable statute and rule.

2. The debt evidenced by Term 1 was excepted from the discharge in bankruptcy granted to the Defendant in BKY 97–38025, by operation of 11 U.S.C. § 523(a)(4).

LET JUDGMENT BE ENTERED ACCORDINGLY.

somewhat unfocused, and lackluster.